Keith joining us. Let me just confirm, Judge Keith, are you with us, sir? Yes, sir. I've got to ask you something, Judge Kessler. You know, you have a special place in my heart. Oh, well, it's mutual, Judge Keith. It really is. I'm not going to be too rough, but if there's a replacement, you know you're on that short list. All right, well, we can talk about that in conference, Judge Keith. No, we can talk about that now. That's OK. Fine with me. Breaking news in Cincinnati. Good afternoon. And I'm assuming that that did not count against this time. No, it does not. We have not started. All right. All right. Thank you, Judge Keith. So we're going to start the argument now. OK, Mr. Ellis. Good afternoon. The third time. Good afternoon. Thank you. Your honors, we're before you on a case, obviously, for the basis going forward is this is not a Katz case. This is a Jones case. And it's been specifically pled as a Jones case. And it's an interesting case, I think, because it's questions something that we may have seen in our everyday society for the last number of years. And the question is, is that continued to be constitutional after the decision in Jones? The test in Jones is very simple, where the government physically occupies private property for the purpose of attaining information. That's a search. There's no dispute here, at least for this record before this court, because Judge Ludington found at least for the purposes of remember, this is a 12 B six motion. We're just in plausibility territory here. He found that that was plausibly a search at that point. The law under the Fourth Amendment is that that is per se unreasonable if a warrant isn't obtained. That's where it's that's where plaintiffs have to end at that particular point. The burden then shifts to the government. And that's Jeffers. Jeffers says a burden belongs to them to prove that there is an exception to the warrant requirement that can be invoked by them to to essentially turn the unreasonable into reasonable by fitting it into an exception in an exception category where I think the I mean, it's not like it's unreasonable. I mean, it's just sort of, you know, it's it's it's presumed to be unreasonable unless you have a warrant or an established exception applies. Correct. I mean, we wouldn't say, OK, it's unreasonable now. They have to show otherwise. Well, the presumption arises. I think that's unreasonable in that respect. That's where we stand in the hierarchy of the analysis. And then when we reach that particular point, then the government needs to show there was consent or there was an exception that would apply in that respect. So I think the only real question before you today, and while the parties, of course, we always have the benefit of reading our briefs six months later after we've submitted them with a little bit clearer heads. I think we're both somewhat kind of passing each other ships in the night and our arguments in the brief. I think our analysis is very simple. At this point, as a 12B6 motion, there's a search. The burden then shifts to the government to say, is there an exception or consent? We don't have consent in this case, clearly. So the question now, I mean, but I'm not aware of case law that says they bear the burden. In other words, you wouldn't have to plead facts supporting the absence of, say, a particular exception. If I don't again, is there a case that says now they bear the burden and that they have to prove something? That's Jeffers. Jeffers does say that. I did it in my brief for that proposition. I mean, aren't we still looking at the pleadings just for a plausibility determination, meaning that you have to set forth sufficient facts to establish the plausibility of the claims? You have to make a factual showing that what you allege is at least plausible. And I think we've done that. We've alleged the facts that there has been no consent and we've alleged... You argue that that's what shifts the burden then to the city. This is a difficult aspect to be at right now because I think what we're seeing particularly out of this particular court is we're having a quasi rule 56 motion rather than a 12B6 motion. The standard for a 12B6 is merely is it plausible, at all plausible that plaintiff could win on some theory? And the answer here is yes, because there is no specific case law that says chalk marking case, you lose. Now, that's the purpose of what discovery would. It's a legal question and even if there isn't a clear answer already, we can provide one in this case on a 12B6. But actual development is what awaits at the 12B6 stage, not us sorting out a legal issue. We can do that. We do that all the time, 12B6. Well, 12B6 is the legal question that exists right there. But again, the question I think, again, going back to what I've stated is that the idea here is, is Taylor's facts that she pled plausible in this respect? And we've alleged the facts. So there's no new facts, I think, that's going to change what Taylor's, from Taylor's perspective. What I'm going to need the opportunity to fill a proper record would be is to depose the ticket, or the ticket issuer. Why, you know? What would you need to find out? Well, what I would need to find out would, one would be, of course, this is a government immunity question, is it a policy or procedure of, and we can set that one aside quickly, I think. But the main question would be is, is for what purpose are you actually going in and actually marking these tickets for? Isn't that obvious? You're talking about the chalk marks? The chalk marks. Isn't it obvious just to determine whether somebody's stayed in the spot longer than the ordinance allows? But the question would be is, does that fit in the community caretaking exception? And again, if the standard, and if, and your Honor's. That's the only exception to the warrant requirement. It is, that's correct. But that's the only one that's been raised by the defendants in this particular record, in this respect. Doesn't mean we're going to give a wrong answer if another one applies. Well, then I guess. I mean, it might not be right for our consideration yet. And that's my concern on, and that's been my biggest concern with these kinds of cases that are coming out of the Bay City Eastern District, is that these are essentially questions that are, you know, at least I view 12B6 as kind of the functioning code of the Michigan's version of C8. And I don't know if either one of you are familiar. Essentially, the question is, is plausibility. Is it possible that a plaintiff could win on the theory that's being asserted here when there's no. So you argue that the district court erred in dismissing the complaint. So tell me why, as succinctly as you can, as focused as you can, tell me why that was error and why you should prevail. The error in that, by the judge in this particular case, is that the standard is not whether you win on the merits. The question is, is whether you have pled a plausible claim going forward. There's a difference. It's a lower threshold that needs to be met. I'm arguing here that we have pled. What is your plausible claim? My plausible claim is that marking the chalk marks violates the Jones standard for Fourth Amendment violation. Because, as we've pled, that the marking of the chalk mark on there is a physical occupation of Mrs. Taylor's or which is sufficient under Jones. So the information being gathered was simply the time at which the car was parked there. The time, it's not even when the time was parked there, it's the time the city official observed it's being parked there, right? I would argue it's similar to Jones in that it's both the movements and non-movements of that particular vehicle. There's nothing that says that as soon as the car entered the garage, somebody chalked it. It's the time the city official observed the car parked. And that person, I mean, they chalked it then, and then they measured that against some other time when they came back around and did another chalking. Correct. Correct. And here, I would argue this case is just like Jones, except the device that they're using here is a chalk mark rather than a high-tech GPS tracking device. And I would argue there's no difference between those two, whether the device is more simplistic in the form of a mark rather than a tracking beacon affixed to the vehicle itself. It's the same thing. It is an intrusion upon private property for extracting the information. It's the same information, where the vehicle is parked and where it's going. And that's the, because again, a parking is not only could be, you could pull your car forward slightly into another parking spot, for example, right? So it's really the same, and to my estimation, it's the same Jones case, except the technology that's being used here is a little less complex. I mean, let's say we agree that there was a search for Jones. You seem to read Jones to think, to mean that we should not proceed to a second question, whether the search is reasonable. I just, that's where I was talking about. I think our cases pass, our arguments pass each other with briefing in hindsight here. Because Jones, as I understand it, they just didn't reach that issue. I think it was WAVE there or something. Right. They didn't decide whether, in fact, we do need to go on to that second question. That is correct. And the fact that Jones answered the question is if there was a search. At that point is, at that particular point, after a search has been established, the case law, and I'm just going to read it, a search is per se unreasonable unless the government establishes a specifically established and well-delineated exception. At that point, the government then has the obligation to argue that they've got, they have this other basis for being exempted from the warrant requirements. Okay. No, I mean, it's straightforward. And it's straightforward. I think it's straightforward. And then if the government succeeds in making that argument, then it changes the per se unreasonableness into a reasonable search. And that's the, I think that's the hierarchy. And your, your honors, I, as part of my briefing with you, I cited a case called Schmidt versus Stassi. It is a Eastern district of Louisiana federal court case. I thought you were going to say Eastern Germany. No, no, no. It's S-T-A-S-S-I, Stassi is how I'd say it. But at the time it was an unpublished decision. It has since turned into a published decision. And I'd like to give the court the site. It's 250 F sub 3rd at 99. And I think the court would be well versed to look at this particular decision because I think Judge Africk down in Louisiana properly delineated the relative burdens going forward between a, a CATS, a CATS based search analysis versus a Jones based analysis. And in that case the, the judge in, in Schmidt actually concluded that simply extracting the DNA on the outside of a door handle of a parked car constituted a search. And, and by conducting the same exact analysis I'm giving to you, is there a search? If yes, then we go on to whether the government can, can meet, overcome its, the presumption. What you don't want us to do is just some sort of balancing per the second step of the CATS analysis. Is that where you're essentially? Yes. Essentially. Yes. Instead you want sort of, you know, a cat, us to look at more categorical exceptions and either they apply or they don't. And that's exactly what Justice Scalia said in Jones. It makes easy cases easy was his exact language. And I think that's what we have here. And I know judges in talking about this case and also in briefing this case and looking at this, I know I'm asking for a landslide type shift in thinking of how we look at the fourth amendment. Because we, courts and, and practitioners and litigants have traditionally always used the reasonableness test of CATS. What's re, is it subjectively believe that there's a privacy interest and then goes on to, of course, quash about whether society is willing to deem that reasonable. That second step of the reasonableness of society is no longer presence in the Jones test anymore. That all goes to whether there's a search though. That's correct. And on this record right now, we have a search. That has not been challenged on appeal here by. Do your pleadings reach the questions, whether, the, the city has a practice of chalking any vehicles within, you know, certain kinds of parking spots or as opposed to whether your client was somehow targeted by the particular officer here. We're not, we're not alleging any specific animus, I guess would be the word I would use that my, that the parking official was gunning for my particular. Do you allege that it's a regular practice? Regular practice. Yes. And it's just my client, if I may, my client works at the local newspaper downtown. And of course it's parking spaces. There's not enough of them and he gets tickets. But I thought you said earlier that one of the reasons you needed to move forward is that you needed to do discovery and everything to see whether there was a, basically a pattern of practice or a pervasive practice of doing this. Well, I need that because I need to be able to prove that there's that which I know, and that which I can prove to make a court record at this point right now, I don't have a court record sufficient for that. That's what discovery would provide. But I can allege, at least it's enough of a practice that we have 15 instances here of where these sorts of things are happening. I know it's red, but real quick, and I know you really haven't addressed this issue in your briefs, either party or the district court, but I mean, what about the administrative search exception? Do you have any thoughts on that? I mean, you know, it starts, you know, checkpoints, they are seizures, pretty similar to searches. And it leads to a balancing test, which would probably be a scary thing for you. I potentially, yes. I mean, I don't want to concede anything, obviously, in that respect. But the problem here is the burden, as I believe it sits with the government to raise administrative search as the exception to the per se unreasonableness. They haven't raised that. So if they want to raise that on remand, that's something they may want to raise as a defense to this particular case. But again, I go back to where we kind of start on all this. This is a 12-B-6 motion. And the government in their briefing at least raised the specter of an implied license argument. What do you say in response or about their assertion of an implied license? I don't think that's relevant here because the implied license goes to whether there was a trespass. And the judge on this record already determined that there was a search. So a trespass, he actually found a trespass had occurred. The government here has not cross-appealed or challenged that in their own separate appeal. So for purposes of this case, as it comes before you, a search has occurred. And that's the record that exists. I think at this point right now, the government hasn't met their overwhelming specific, and the language is very clear, specifically established and well delineated. I'm sorry. Why don't you save that for rebuttal? Fair enough. Let's see if Judge Keith has any questions. Judge Keith? I would like to just say I was in the hospital for rehabilitation for three or four weeks, and I am still trying to recuperate. So I would just concur with either one of you because, am I wrong when I say this? Okay. All right. Well, we'll take that up, Judge Keith, in the conference room. We're still at argument. I know you can't see what's going on. So thank you. All right. Mr. Ellison, thank you. We'll hear from Mr. Meyer. Good afternoon, Your Honors. Brett Meyer for the defendant or appellee's city of Saginaw on Tabitha Hoskins, who incidentally is the individual officer or parking enforcement officer referenced in plaintiff's pleadings. I think the issue here, frankly, is really narrow. And I think based on the briefing that the appellant submitted, the issue is really, does the appellant read too much into Jones? And as we've indicated, I think that the appellant does. The issue in Jones, as Your Honor alluded to, was not whether or not the search that occurred by placing a GPS tracker under a criminal suspect's, or I believe it was the suspect's wife's vehicle, was reasonable or not. That is the second step of the inquiry. And that's what we're talking about here. The issue in Jones was whether or not it was a search at all. Do you agree it's a search here? I agree. It is a search, Your Honor, for purposes of this appeal. Yes. Because if we're talking about, and there's some, I guess you would say confusion post-Jones as to whether or not, and this kind of goes to the Jardines case, whether or not a search is... Well, I think you can read Jardines two ways, Your Honor. I think you can read Jardines in the context of saying that if something is licensed, and it is a search, it is reasonable. I also think you can read Jardines as saying if something is implicitly licensed as a quote-unquote habit of the country, it may not be a search at all, depending upon the conduct that we're talking about. Are you traveling on that it is licensed in this instance? Are you traveling on that argument? Yes, Your Honor. I think the primary argument here is that the search is reasonable. And Judge Kethledge, you raised the administrative search exception. We brought that up in our briefing before the district court, and the district court did indicate in its opinion in order that while the administrative search exception may apply here, and took some stock into that, it found that the community caretaking exception fit this case a little more closely. Well, just to follow up on Judge Donald's question, I guess this Jardines implied license idea is that in some implied way she consented to the search? Is that, I mean, like, is she really consenting to the search after, say, her third parking ticket? Well, isn't that just a total fiction? I don't think... I would agree with you that there is no consent to the search in an express manner. Ms. Taylor... Ms. Taylor, if we're putting it in that context, yes, Your Honor, then I suppose the license of, I guess, argument here is not as strong and doesn't follow or track as much with the facts of this case. I mean, the district court did not rely on that theory. I sort of just mentioned it, but I didn't really see a holding. Is that your understanding? That is correct, Your Honor. I think what the district court indicated is that based upon the party's positions in the briefing and even the complaint or the first amended complaint that was submitted by the plaintiff, it was a, in the district court's words, and I'm paraphrasing here, a close call as to whether or not this conduct is licensed tracking with and following Jardines. I don't see an argument in your brief, and this is for purposes of just figuring out what we have to address in this case. I don't really see an actual argument that there was some kind of implied license. Is that fair? Is that a fair characterization in your position? We did raise the issue, Your Honor. So it's a binary question. Are you making that argument here? Is that something we have to deal with? We are raising that argument. Really? Yes, Your Honor. But if there's no consent, how can there be a license? Isn't that sort of the essence of a license? I think following with Jardines and the analogy that the district court used is a private citizen putting a flyer or a brochure on someone's windshield and that touching the tire of a vehicle on the road in a parking space in a public roadway is no more than any other private citizen might do. I thought you just agreed earlier that the Jardines rationale did not really apply here in response to your adversary's argument, that he sufficiently delineated that. And in the briefing, I didn't really see a real treatment of the argument that you're making now. So on what basis do you argue that this is an issue that we need to address at this level? Well, I guess, Your Honor, I would indicate that while we did bring up the issue of Jardines, perhaps, and I don't think that... Is bringing it up sufficient to get it properly before us? Let me say no, Your Honor. I guess it's not developed. I mean, I'm not really seeing any argument. I'll go straight to the point. And the point here is that the search, based upon the physical intrusion or whether we're calling a physical intrusion or a trespass by putting a chalk mark on the tire of a vehicle parked in a public space on the roadway, is reasonable. And the exception that the district court followed, and we raised this with the district court, and it was the primary... Well, let me just step back. I mean, you're taking for granted that we would do a Katz-type balancing for reasonableness in a case involving a physical trespass. How do you get there? Jones doesn't say that. Jones doesn't say anything either way. Why would we necessarily do that as opposed to what Mr. Ellison pointed out, which is, I mean, Jones does say you have to point to a specific exception to the warrant requirement. And the exception that we're pointing to here, Your Honor, is the community caretaking exception. Okay. These types of, and that's the Katie versus Dombrowski case, these types are everyday, non-criminal contacts. And the plaintiff has not pledged here, or excuse me, pleaded here or alleged in any way, and I think it is frankly undisputed at this point, that chalking a tire for purposes of enforcement of a municipal parking regulation... In this, doesn't the community caretaking exception require that there be some public safety issue or something that either inconveniences or jeopardizes the public? And if that's the case, what can you point to here that would bring this case within that public caretaker exception? Well, I think the exact reason that we have municipal parking regulations, Your Honor, is for public convenience and public safety. But this was not a case where the vehicle was parked, for example, in front of a fire hydrant, or parked on the street so that it was impeding traffic. It was parked in a legitimate parking space, correct? And the chalking was to see whether or not the time parked there exceeded whatever the basic amount was, or what the basic time was. Isn't that the case? And so, where is there a public safety issue implicated? Well, I think there is a public safety issue, and I think the issue is not so much public safety, although depending upon the circumstance, there could be an issue, Your Honor, where public safety comes into play with a vehicle that is parked for some sort of excessive amount of time. It's revenue that's at issue. I think the issue, Your Honor, is public convenience. If all of the parking spaces in an area on a public street are taken, in part because someone is parking their vehicle in that space for some sort of extended period of time that exceeds the regulation, in this case, for the court, I'll indicate that the area in Saginaw that we're talking about is a two-hour, time-limited parking area, there is an issue and a matter of public convenience there. And I think the community caretaking exception applies not just to issues involving or relating to public safety, but also relating to public convenience. Okay, so Judge Kethledge just asked or commented that this is really a revenue-generating regulation, a parking issue. So if it is just revenue-related, does that fit within the public caretaking function? I agree with Your Honors that the enforcement of these parking regulations does obviously generate revenue for the city of Saginaw. That being said, as I've indicated, revenue is not the only reason that we have these public parking regulations here. These are authorized by Michigan statute. The city is vested with the power to enforce these regulations. And as I've indicated, it is a matter of public convenience in addition to the generation of revenue, which I don't dispute for a second, that enforcing these parking regulations does generate revenue for the city. Let me be candid with you about my concern about this public caretaking exception here. I'm not aware of any case where that doctrine applied in which the government, the officer, first contacts, approaches the property, the car, for the purpose of obtaining information, which of course is the hallmark of a search. These caretaking, you know, it's where a wrecked car is in the intersection, where a car that was being driven by a drunk driver is impounded, et cetera, and the sort of property falls into the government's hands and it has to do something with it. So why shouldn't we say that the doctrine does not apply, because apparently it never has, when the government's first action with respect to the property is to try to obtain information, i.e. search it? Your Honor, I think the issue here, again, is that although the, and I would agree with you. Is there a case you're aware of where the first thing the government did was seek information with respect to the property and yet this caretaking exception applied? Is there any such case? I am not aware of such a case, Your Honor. However, in the converse, I guess, I would indicate that I am not aware of a case, or at least it wasn't cited by the parties in the briefing that I'm aware of, that says just because the first contact, or merely because the first contact between the government and a private citizen is for purposes of obtaining information, a search, yes, Your Honor. Wouldn't that be relevant, you know, in determining whether you need a warrant the first time you get a hold of the property is to search it? That's different than we've got to impound this car or we've just taken somebody into custody and now we have to go through, we have to itemize their belongings because we don't want the person saying that we stole something. I mean, in those cases, to some extent, the government's forced to do something that looks like a search and we kind of give them a break on the warrant requirement. If the first time the government comes to the property is to search it, isn't that a pretty good reason to apply the warrant requirement? Your Honor, I guess I would indicate that the warrant requirement shouldn't apply here because this is a different type of search than if we're talking about some sort of criminal conduct or we're talking about some sort of... I mean, you seem to be hearkening back now to, you know, a cat's type of case, but the case law that applies here doesn't provide that civil criminal distinction and in fact, it doesn't say that it has to be for a criminal purpose. It's just the obtaining of evidence. It doesn't have to be any harm done to the property. It doesn't have to fit into the cat's type of criteria. Remember that line that counsel officer said earlier about keeping the easy cases easy, that if you go in to get information and here, that was the purpose, to get information about how long the cart been there. That's enough. The Fourth Amendment is implicated. I would agree with Your Honor that the Fourth Amendment is implicated and I'm not disputing that there is a physical intrusion here for purposes of obtaining information and that post Jones, that constitutes a search, but just because the Fourth Amendment is implicated doesn't mean that the Fourth Amendment is violated. But you haven't found us yet an exception to bring this case within. I guess I would hearken back to what we've indicated in our briefing and what the district court agreed with that the community caretaking exception applies here. These are the sorts of everyday government citizen contacts that occur in municipalities all over the country. I guess if I could draw an analogy here or talk about a little similar circumstance as I wrap up briefly, there are spatial related parking regulations all over the country as well. You may not park or you must park within X amount of feet of the curb. Well, if a government official is measuring that distance and has to touch a tire. Why would you have to touch the tire though? It's a possibility, Your Honors. That's why it would be possible, to be honest with you. All right. Well, Mr. Meyer, I know it's an interesting case and a novel case. We appreciate your argument. Judge Keith, do you have any questions for counsel for the city of Saginaw? Not at all, not at all. All right. Thank you, sir. All right. Mr. Ellison, rebuttal. I guess the last point is where I would start off where I began with. This is a Jones case and we're at the 12B6 stage. We're not at the Rule 56 stage. We got the 12B6. Yeah, I'm pounding that as loud as I can on the lectern today because this is the opportunity. This is just whether we get through the pleading stage at this point. You don't need to pound if we've got that far. All right. Ready to go. The only thing, unless the court has any other questions, I think that the questioning of my opponent here, I think highlights the arguments that we put forward in our briefs. Very well. All right. Thank you. Does the judge up above have any questions? It's okay. Okay. Thank you very much. We thank you both for your questions.